IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| L.W., A MINOR BY AND THROUGH HIS MOTHER PIPER WARE | § § § | PLAINTIFF |
| VS. | § § | CAUSE NO. 1:10cv330-LG-RHW |
| TYSON FOODS, INC., and WAL-MART STORES EAST, LP | § § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING
SUMMARY JUDGMENT AND MOTION TO LIMIT TESTIMONY**

BEFORE THE COURT are Defendants Tyson Foods, Inc., and Wal-Mart Stores East, LP's [60] Motion for Summary Judgment and [62] Motion to Limit the Testimony of Plaintiff's Treating Physicians. Piper Ware initiated this personal injury action, on behalf of her minor son Plaintiff L.W., for his alleged food poisoning from Tyson's hamburger meat sold through Wal-Mart. Defendants argue there is no proof the meat (1) was sold by Tyson and Wal-Mart, (2) was defective, or (3) caused his injuries. Defendants further argue (4) his treating physicians' testimonies should be limited to what is contained in the medical records. The Court has considered the parties' submissions and relevant legal authority. Summary judgment is denied. The motion to limit testimony is denied as moot.

**FACTS AND PROCEDURAL HISTORY**

On or about July 4, 2008, L.W. consumed a hamburger at his grandmother Sheila Lawrence's house. She prepared the hamburger allegedly from Tyson's ground beef she bought at the Wal-Mart store in Wiggins, Mississippi. Shortly thereafter he

became ill with diarrhea, nausea, vomiting, fever, and stomach cramps. He was eventually hospitalized and diagnosed with campylobacter food poisoning. He allegedly developed irritable bowel syndrome and endured emotional distress. Subsequently Ware initiated this action for breach of the implied warranties of merchantability and fitness for a particular purpose.

## DISCUSSION

SUMMARY JUDGMENT

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 325. Once the movant carries its burden, the burden shifts to the non-movant to show that

summary judgment should not be granted. *Id.* at 324-25.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to the particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In Mississippi, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Miss. Code Ann. § 75-2-314(1). To prove L.W.'s breach of implied warranty of merchantability claim, he must prove the hamburger meat was defective (unmerchantable), and the defect existed at the time the meat left the control of the Defendants. *Jacob Hartz Seed Co. v. Simrall & Simrall*, 807 So. 2d 1271, 1274 (¶11) (Miss. Ct. App. 2001). He must also prove his injuries were proximately caused by the defect. *Thomas v. HWCC-Tunica, Inc.*, 915 So. 2d 1092, 1094 (¶12) (Miss. Ct. App. 2005).

Mississippi law also provides that "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose." Miss. Code.

3

Ann. § 75-2-315. To prove L.W.'s breach of implied warranty of fitness for a particular use, he must prove, among other things, the meat was defective because it was "unfit for the particular purpose" for which it was purchased. *Lacy v. Morrison*, 906 So. 2d 126, 131 (¶15) (Miss. 2004).

Defendants argue both claims fail because Defendants were not the sellers of the meat, it was not defective, and it did not cause L.W.'s injuries.

I.   SOLD BY DEFENDANTS

First, Defendants argue there is no proof they ever controlled the ground beef or sold it, because there is no proof Lawrence bought it from Wal-Mart.

Defendants point to evidence that none of Lawrence's June 2008 checks to Wal-Mart were for hamburger meat. She averred, however, that she bought it from the Wal-Mart store in Wiggins, and that it "was the only grocery store I did business with at the time." (Lawrence Aff. at 1 (¶1)). This is sufficient to create a genuine issue of material fact.

II.  DEFECT

Next, Defendants argue there is no evidence the ground beef was defective because it was never tested for the presence of campylobacter bacteria. Ware responds that the timing of L.W.'s illness and the lab tests establish that the meat was tainted with the bacteria.

According to Ware, L.W. ate the hamburger one evening. His symptoms began later that same night. "The only food item he consumed prior to becoming ill was the hamburger meat." (Pl.'s Answers to 2d Set of Interrogs. at 3). He developed a fever

and diarrhea and was vomiting. When these symptoms existed for several days, a stool culture was obtained from him and tested at Forrest General Hospital. The sample tested positive for campylobacter bacteria and steptococcus pyogenes/Beta Group A. Furthermore, L.W.'s grandfather likewise consumed a hamburger from the same ground beef on the same evening. He grandfather also "became ill after consuming the meat. . . . [He] had severe diarrhea but did not seek medical attention." (Pl.'s Answers to Defs.' Interrogs. at 4).

The Mississippi Supreme Court previously examined sufficiency of the evidence in breach of implied warranty cases based upon alleged food poisoning from infected meat. The court found sufficient evidence of a defect in *Armour & Co. v. McMillain*, 155 So. 218 (Miss. 1934). Eula B. McMillain claimed that sausage canned by Armour and Company was tainted with bacteria and caused her food poisoning. *Armour & Co. v. McMillain*, 155 So. 218, 219 (Miss. 1934). Armour's sausage was canned in oil and delivered to a grocer for retail. *Id.* The grocer initially opened the can with a can opener and closed the can with a lid supplied by Armour. *Id.* An hour later, McMillain's father purchased some of the sausage out of the can from the grocer. *Id.* The father took it home, and thirty minutes later Plaintiff and her family ate it without cooking it. *Id.* One hour later she and other family members became sick, although they were not as sick as she. *Id.* Her doctor testified that she was ill from "acute botulism" from the sausage. *Id.* Experts testified that the shortest time it takes for bacteria to develop enough poison to cause illness was at least six hours. *Id.* This

was sufficient evidence that the sausage was defective when it left Armour and that the defect caused McMillain's illness. *Id.* at 219-20.

Another breach of warranty case held there was insufficient evidence that defective meat caused damages. *John Morrell & Co. v. Shultz*, 208 So. 2d 906, 907 (Miss. 1968). Mrs. Shultz became ill one hour after consuming a can of potted meat. *Id.* at 906. There was no strange odor or taste. *Id.* at 907. There was only a gray cast but "she did not consider the potted meat to be deleterious." *Id.* Her doctor testified that she had gastroenteritis that could have been caused by "something defective in the potted meat," other foods, or a stomach virus. *Id.* This was insufficient evidence to conclude that the meat was defective and caused Plaintiff's illness. *Id.*

This case is similar to *Armour*. L.W. and at least one other family member became sick shortly after eating the same meat. Like the *Armour* plaintiff, L.W. was also diagnosed with a bacterial born food poisoning. Particularly, he was tested and found to have campylobacter bacteria. This is inapposite to *John Morrell & Company* where the plaintiff's doctor attributed her illness to "something defective" in the meat, other foods, or a stomach virus. *Id.* There is a genuine dispute of material fact as to whether the hamburger meat was defective.

## IV.  CAUSATION

Finally, Defendants argue there is no evidence that the hamburger meat caused L.W.'s illness because he has no medical opinion testing the hamburger meat and he had unspecified "stomach problems" some time before August 9, 2007. (Defs.' Mem.

Summ. J. at 6).

For the reasons discussed above, there is a genuine dispute of material fact as to whether the hamburger meat caused L.W.'s illness.

<u>MOTION TO LIMIT TESTIMONY</u>

Defendants ask the Court to limit the testimony of the treating physicians to their medical records on the motion for summary judgment. Because the Court was not provided with any physician testimony outside of medical records, the motion to limit is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above Defendants Tyson Food, Inc., and Wal-Mart Stores East, LP's [60] Motion for Summary Judgment should be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' [62] Motion to Limit the Testimony of Plaintiff's Treating Physicians should be and is hereby **DENIED AS MOOT.**

**SO ORDERED AND ADJUDGED** this the 9th day of August, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE